**SO ORDERED.**

**SIGNED July 9, 2012.**



ROBERT SUMMERHAYS
UNITED STATES BANKRUPTCY JUDGE

---

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

IN RE:

CLIFTON DAVID GUIDRY and
AIMEE NEUSCHWANDER GUIDRY,            CASE NO. 08-50883

    Debtors

---

LOUISIANA MACHINERY COMPANY, LLC

VERSUS                          ADVERSARY NO. 08-5056

CLIFTON DAVID GUIDRY and
AIMEE NEUSCHWANDER GUIDRY

12JD-500.7

---

**MEMORANDUM DECISION**

---

Louisiana Machinery Company, LLC filed this adversary proceeding against the debtors, Clifton Guidry and Aimee Guidry, and seeks a determination that the debts owed by the debtors to Louisiana Machinery are non-dischargeable. The court took the case under submission following a trial on the merits. After

considering the trial record, the parties' arguments, and the relevant authorities, the court rules as follows.

## JURISDICTION

The court has jurisdiction over the matters asserted in this adversary proceeding pursuant to 28 U.S.C. §§1334 and 157(a). This matter is a core proceeding in which this court may enter a final order pursuant to 28 U.S.C. §157(b)(2)(I) and (J). The following Memorandum Decision shall constitute the court's findings of fact and conclusions of law.

## BACKGROUND

Clifton Guidry and his business partner, Eddie Begnaud, operated a residential investment and development business through multiple business entities, including Guidry & Begnaud Development, LLC and Alpha Omega Construction Enterprise, LLC. Guidry and Begnaud each owned 50% of these two entities. Alpha Omega and Begnaud were primarily responsible for the residential construction side of the business. Neither Guidry & Begnaud Development nor Alpha Omega has sought relief under Title 11.

The present case focuses on another aspect of Guidry & Begnaud Developments' business: reselling construction equipment purchased from Louisiana Machinery. Guidry & Begnaud purchased over $8,000,000 of equipment from Louisiana Machinery from February 24, 2005 through July 31, 2008. (Pre-trial Stipulation, Exh. 12). The

record includes a schedule of purchases from February 2006 through May 2007 showing that, during this period, Guidry & Begnaud Development purchased 21 pieces of equipment from Louisiana Machinery totaling $4,074,240. (Exh. 8). Until December 2006, Guidry & Begnaud Development paid for each piece of equipment. In December 2006, Guidry & Begnaud Development purchased 3 pieces of equipment totaling $659,300. Guidry & Begnaud Development only paid Louisiana Machinery $5,000 toward this purchase, although Guidry & Begnaud Development subsequently purchased and paid for $375,000 of equipment in April and May 2007. Clifton Guidry testified that Guidry & Begnaud Development began to suffer financial problems in the middle of 2006. He also testified that Guidry & Begnaud Development sold the equipment bought from Louisiana Machinery, but used the proceeds from the sale for company expenses instead of paying Louisiana Machinery.

Clifton and Aimee Guidry subsequently filed for relief under Chapter 7 of the Title 11 in July 2008. The case was subsequently converted to a case under Chapter 13. Louisiana Machinery filed the present adversary proceeding seeking a determination that the unpaid amounts for the equipment purchased in December 2006 are non-dischargeable under 11 U.S.C. § 523(a)(2)(B) and § 523(a)(4). Louisiana Machinery alleges that the debtors misrepresented their personal financial information when they first set up their

-3-

account. Louisiana Machinery alleges that Guidry signed an Application for Financing with Louisiana Machinery on behalf of Guidry & Begnaud Development on January 12, 2005. That application lists Guidry's net worth as $1.8 million, and his personal income as $200,000. The application also included a personal guaranty agreement. The record reflects that the debtors' personal net worth and income was substantially less that what was listed on the application. Clifton Guidry testified that, since the application was made on behalf of Guidry & Begnaud Development, he believed that he could include the appraised value of a development owned by Guidry & Begnaud Development as part of his personal net worth. He further testified that a Louisiana Machinery sales manager was present when he completed the application and advised him to list the appraised value of the development as his net worth as well as Begnaud's net worth since they were the sole co-owners of the business. Louisiana Machinery also cites transfers of funds between Guidry & Begnaud Development and Alpha Omega as well as the debtors' use of company funds for personal expenses.

## DISCUSSION

### A. Section 523(a)(2): False Pretenses and Materially False Written Statement

A creditor has the burden of proof in an action to determine the dischargeability of a debt under section 523(a). <u>Grogan v.</u>

Garner, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." Hudson v. Raggio & Raggio, Inc. (In re Hudson), 107 F.3d 355, 356 (5th Cir. 1997). Accordingly, a creditor must establish each and every element of a statutory exception to discharge under 11 U.S.C. § 523 et seq. by a preponderance of the evidence.

Section 523(a)(2)(A) provides that "money, property, services, or an extension, renewal, or refinancing of credit" that is obtained through "false pretenses, a false representation, or actual fraud" is subject to exception from a debtor's discharge. 11 U.S.C. § 523(a)(2)(A). In order for a debt to fall within section 523(a)(2)(A), the debtor's fraud or false representation must involve the debtor's "moral turpitude or intentional wrong." Vizzini v. Vizzini ( In re Vizzini), 348 B.R. 339, 343 (Bankr. E.D. La. 2005), aff'd, 234 Fed. Appx. 234 (5th Cir. 2007) (quoting In re Chavez, 140 B.R. 413, 419 (Bankr. W.D. Tex. 1992)). In order to deny discharge of a debt under section 523(a)(2)(A), the plaintiff must prove that: (1) debtors made representations; (2) debtors knew the representations were false at the time they were made; (3) debtors made the representations with the intent to deceive

plaintiffs; (4) the plaintiff justifiably relied on these misrepresentations; and (5) the plaintiff's injury was sustained as a proximate result of the representations having been made by debtors. In re Bercier, 934 F.2d 689, 692 (5th Cir. 1991); RecoverEdge L.P. v. Pentecost, 44 F.3d 1284, 1293 (5th Cir. 1995). Section 523(a)(2)(B) makes debts nondischargeable to the extent that money, property, services, or an extension, renewal, or refinancing of credit are obtained by "use of a statement *in writing*- (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive." 11 U.S.C. § 523(a)(2)(B) (emphasis added).

The focus of Louisiana Machinery's section 523(a)(2) claims is the Application for Financing and Mr. Guidry's representations about his personal income and net worth. There is no dispute in record that the debtors did not have the $1.8 million net worth and $200,000 annual income reflected on the Application for Financing. However, based on the record, Louisiana Machinery has not met its burden of establishing the elements of a claim under sections 523(a)(2)(A) and 523(a)(2)(B). With respect to both provisions, Louisiana Machinery must establish that Clifton and Aimee Guidry

-6-

acted with the intent to deceive. The record reflects that Aimee Guidry did not sign the Application for Financing and had little or no role in the representations made to Louisiana Machinery. With respect to Clifton Begnaud, he testified that, at the time he completed the application on behalf of Guidry & Begnaud Development, he believed that he could include the appraised value of a development owned by the company in his personal financial information because both he and Eddie Begnaud owned the company. The fact that the $1.8 million net worth and $200,000 income was listed for **both** Guidry and Eddie Begnaud supports Guidry's testimony in this regard. Guidry also testified that he disclosed the appraised value of the development to a Louisiana Machinery sales manager, who indicated that he could list this value in his personal financial information. Louisiana Machinery's witness – its current finance manager, Clifton Jones – was not employed at Louisiana Machinery when the Application for Financing was completed and, accordingly, could not challenge Mr. Guidry's explanation as to why the $1.8 million was listed as his net worth. Considered as a whole, the record simply does not establish by a preponderance of the evidence that the debtors acted with the intent to deceive Louisiana Machinery.

Louisiana Machinery also has not established the reliance element of a claim under sections 523(a)(2)(A) or 523(a)(2)(B).

With respect to a section 523(a)(2)(A) false pretenses claim, Louisiana Machinery must establish that it "justifiably" relied on the false financial information provided by the debtors. See Field v. Mans, 516 U.S. 59 (1995). Justifiable reliance focuses on whether the falsity of a representation should have been apparent to the individual to whom it was made. Id. at 720. A claim under section 523(a)(2)(B) requires a more exacting showing of "reasonable" reliance: whether a hypothetical reasonable person would have relied on the representation. Id. at 76-70.

The record does not support either reliance standard for at least two reasons. First, Clifton Guidry testified that a Louisiana Machinery sales manager told him that he could include the $1.8 million appraised value of the residential development in his personal financial information. Louisiana Machinery was thus on notice that Guidry's personal financial information included the value of property owned by Guidry & Begnaud Development. Second, it is not clear Louisiana Machinery relied on the Application for Financing when it delivered $8 million of construction equipment to Guidry & Begnaud Development over a two and a half year period. Specifically, the bottom of this application includes a section completed by Louisiana Machinery titled "LMC Internal Agreement" that approves a credit limit of only $2,500 based on the application. Mr. Jones testified that this $2,500 notation

-8-

referred to financing for "parts and service" and that it did not refer to a limit on equipment sales. The problem with Mr. Jones' testimony is that he was not employed by Louisiana Machinery at the time the application was approved and has no personal knowledge of Guidry's application or any decision made based on the application apart from a notation that Guidry & Begnaud Development was approved for a $2,500 credit line. Moreover, while Mr. Jones had personal knowledge of the December 2006 deliveries because they occurred after he joined Louisiana Machinery, he testified that the December equipment was released to Guidry & Begnaud Development based on its past purchase history and regular payments. In sum, the record does not support Louisiana Machinery's allegation that it justifiably or reasonably relied on the representation that the net worth and income figures in the Application for Financing reflected only Guidry's and Eddie Begnaud's personal financial condition in approving the December 2006 equipment sales. The court, therefore, finds in favor of the defendants with respect to Louisiana Machinery's claims under sections 523(a)(2)(A) and 523(a)(2)(B).

**B. Section 523(a)(4): Fraud or Defalcation While Acting in a Fiduciary Capacity, Embezzlement, or Larceny**

The Bankruptcy Code excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement

or larceny." 11 U.S.C. § 523(a)(4). This exception "was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." Miller v. J.D. Abrams Inc. (In re Miller), 156 F.3d 598, 602 (5th Cir. 1998) (quoting In re Boyle, 819 F.2d 583, 588 (5th Cir. 1987)). With respect to embezzlement and larceny, the manner in which the debtor comes into possession of the property determines which definition applies. For purposes of section 523(a)(4), embezzlement is defined as the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." In re Miller, 156 F.3d at 602 (emphasis added). Larceny is defined as the "fraudulent and wrongful taking and carrying away of the property of another with intent to convert it to the taker's use and with intent to permanently deprive the owner of such property." In re Hayden, 248 B.R. 519, 526 (N.D. Tex. 2000) (emphasis added). In order to establish a non-dischargeability claim for fiduciary fraud or defalcation, a creditor must establish that its relationship with the debtor fell within the narrow confines of section 523(a)(4). Not all fiduciary relationships under state law fall within section 523(a)(4). The type of relationship required

to trigger liability for fraud or defalcation under section 523(a)(4) is determined by federal law. A fiduciary under section 523(a)(4) is narrowly defined, applying only to technical or express trusts. In re Bennett, 989 F.2d 779, 784 (5th Cir. 1993)(citing In re Angelle, 610 F.2d 1335 (5th Cir.1980)); see also In re Tran, 151 F.3d 339, 342 (5th Cir. 1998); In re Schwager, 121 F.3d 177, 186 (5th Cir. 1997). The requisite trust relationship must exist prior to the act creating the debt and without reference to that act. In re Bennett, 989 F.2d at 784; see also In re Tran, 151 F.3d at 342 (trustee's obligations must have been imposed prior to, rather than by virtue of, any claimed misappropriation or wrong). "In other words, the trust giving rise to the fiduciary relationship must be imposed prior to any wrongdoing. The debtor must have been a trustee before the wrong and without any reference to it." In re Bennett, 989 F.2d at 784 (citation omitted). Therefore, constructive trusts or trusts *ex malificio* are insufficient to create a fiduciary relationship within the meaning of section 523(a)(4). See In re Tran, 151 F.3d at 342. However, the " 'technical' or 'express' trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, **but includes relationships in which trust-type obligations are imposed pursuant to statute or common law**." In re Bennett, 989 F.2d at 784-85 (emphasis added). While federal law governs the scope of

-11-

the fiduciary relationships that fall within the ambit of section 523(a)(4), courts look to state law in determining whether the "trust-type obligations" cited in Bennett exist.

Applying the elements of section 523(a)(4) to the record, Louisiana Machinery has not met its burden of establishing the requisite fiduciary relationship required by section 523(a)(4). Aimee Guidry had no relationship with Louisiana Machinery that would qualify as an express trust or "trust-type" relationship. With respect to Clifton Guidry, the Application for Financing creates no broker or agency relationship, much less the express trust or "trust-type" relationship required by Bennett. Instead, the record reflects the type of arms-length business relationship between Louisiana Machinery and Guidry & Begnaud Development that is not sufficient under Fifth Circuit precedent to establish that Guidry himself was a fiduciary within the meaning of section 523(a)(4). Finally, the record does not support a claim of larceny or embezzlement under Section 523(a)(4). Louisiana Machinery points to numerous money transfers among Alpha Omega, Guidry & Begnaud Development, and the debtors. Standing alone, however, neither the timing or context of the transfers establish the requisite wrongdoing required to prove larceny or embezzlement. Moreover, both causes of action require a showing of fraudulent intent or the intent to deprive a creditor of its property. As

explained previously, the record does not support a finding of fraudulent intent, nor does it support a finding that the debtors acted with the intent to deprive Louisiana Machinery of its property. The court, therefore, finds in favor of the defendants with respect to Louisiana Machinery's Section 523(a)(4) claims.

## CONCLUSION

For the foregoing reasons, the court finds in favor of the defendants on all counts. Defendants shall submit a judgment that reflects the court's ruling herein within 20 days.

###